IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br>v.<br><br>SIU LIM LEE d/b/a MEGA-MUSCLES,<br><br>    Respondent. | Misc. No.: 2:25-mc-5 |

MEMORANDUM IN SUPPORT OF PETITION FOR ENFORCEMENT OF
DEA SUBPOENA NO. R3-25-009039

    The United States of America submits this memorandum in support of its Petition to Enforce an administrative subpoena issued to Respondent by the Drug Enforcement Administration ("DEA") under the Controlled Substances Act ("CSA"), 21 U.S.C. § 876(a) (the "Subpoena").

    The Subpoena seeks information relevant to an ongoing DEA investigation into potential violations of the CSA. The Subpoena was issued pursuant to DEA's authority to investigate such CSA violations and seeks specific information relevant to DEA's investigation. The Subpoena therefore satisfies all requirements for enforcement. Accordingly, the Court should compel compliance.

BACKGROUND

    On October 7, 2024, DEA issued the Subpoena to Respondent Siu Lim Lee d/b/a Mega-Muscles. *See* Pet. Ex. 1. The Subpoena explained that it was issued "[p]ursuant to an investigation of violations of 21 U.S.C. Section 801 *et seq*." and instructed Respondent to produce, for a roughly three-year period:

>Any and all records for receipt or sales by your company Mega-Muscles and or foreign and domestic subsidiaries, affiliates, owners, purchasers, and consignees, in any capacity related to epiandrosterone, 7-Keto Dehydroepiandrosterone (7-keto DHEA), and/or 19-nor dehydroepiandrosterone (19-nor DHEA) and products containing epiandrosterone, 7-Keto Dehydroepiandrosterone (7-keto DHEA), and/or 19-nor dehydroepiandrosterone (19-nor DHEA)

Pet. Ex. 1 at 1. The Subpoena listed eight specific categories of documents sought:

>1. Domestic and foreign supplier list including company name, address, point of contact, telephone number, products purchased during the period 10/6/2021 to present;
>
>2. Instructions, formulas, commercial container labels provided by you or your company Mega-Muscles to supplier-manufacturers for each order during the period 10/10/2022 to present;
>
>3. Written explanation regarding how orders are placed with each supplier-manufacturer;
>
>4. All receiving records kept in the normal course of business for the order, purchase, and receipt of epiandrosterone, 7-keto DHEA and/or 19-nor DHEA products from manufacturers, or any other suppliers, during the period 10/10/2022 to present;
>
>5. Domestic transportation records for epiandrosterone, 7-keto DHEA and/or 19-nor DHEA, in all forms, including raw material, finished product, and in-process material;
>
>6. Epiandrosterone, 7-keto DHEA, and/or 19-nor DHEA products commercial customer list, including customer name with any OBA, address, point of contact, telephone number, product name, commercial container size for products sold during the period 10/10/2022 to present (customers include any third parties that may sell epiandrosterone, 7-keto DHEA, and/or 19-nor DHEA products on your behalf, and any individual bulk customers);

      7.     All distribution records kept in the normal course of business for the distribution of epiandrosterone, 7-keto DHEA and/or 19-nor DHEA products to commercial customers or bulk individual customers (distributions include, but are not limited to the sale or transfer of products to another person or entity) during the period 10/10/2022 to present;

      8.     For epiandrosterone, 7-keto DHEA and/or 19-nor DHEA products directly distributed or sold by your company online: a list of the website names, website addresses (URL), company name and any DBA associated with the website, and the address of the physical location from where products are distributed (sold and shipped, if different locations) to online customers.

*Id.* at 1–2.

On October 22, 2024, DEA Diversion Investigators travelled to Respondent's residence in Virginia Beach, Virginia, and—after confirming his identity—personally served him with the Subpoena. Pet. Ex. 2, Declaration of Louis Moran ("Moran Decl."), at ¶ 10. On or about October 25, 2024, counsel for Respondent contacted DEA investigators by email and requested additional time to respond to the Subpoena. *Id.* at ¶ 11. Respondent was granted until November 29, 2024, to respond. *Id.* On or about December 6, 2024, Respondent's counsel informed DEA that Respondent refused to comply with the Subpoena. *Id.* at ¶ 12.

To date, Respondent has failed to produce any documents or information in response to the Subpoena. *Id.* at ¶ 13. Respondent's noncompliance with the Subpoena is hindering DEA's ability to conduct its investigation. *Id.* at ¶ 14.

## ARGUMENT

### I. Legal Standard

"As a general rule, proceedings to enforce administrative subpoenas are summary." *In re Oral Testimony of a Witness*, 1 F. Supp. 2d 587, 589 (E.D. Va. 1998) (quoting *United States v. Witmer*, 835 F. Supp. 201, 205 (M.D. Pa. 1993)). A proceeding to enforce an administrative

subpoena is instituted through a petition and order to show cause, rather than a complaint and summons. *See United States v. Am. Target Advert.*, 257 F.3d 348, 350 (4th Cir. 2001); *E.E.O.C. v. Md. Cup Corp.*, 785 F.2d 471, 475 (4th Cir. 1986). "Unlike civil lawsuits, summary enforcement proceedings do not typically involve discovery, testimony from parties or witnesses, or the presentation of evidence." *In re Application to Enforce Administrative Subpoenas of SEC*, No. 13-cv-08314, 2013 WL 6536085, at *2 (C.D. Cal. Dec. 13, 2013). The Government can establish its *prima facie* case "solely through a government official's declaration." *Perez v. Beachside Home Care, LLC*, No. 4:16-mc-191, 2016 WL 8117949, at *4 (D.S.C. Nov. 22, 2016) (citing *United States v. Stuart*, 489 U.S. 353, 360 (1989)). "Once the government makes this preliminary showing, the burden shifts to the respondent to prove that enforcement of the administrative subpoena would be unreasonable." *Id.*

A "district court's role in enforcing administrative subpoenas is sharply limited." *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 113 (4th Cir. 1997) (internal quotations omitted). "To enforce an administrative subpoena, the district court need only find that (1) the agency is authorized to make such an investigation; (2) the agency has complied with statutory requirements of due process; and (3) the materials requested are relevant." *Solis v. Food Emps. Labor Relations Ass'n*, 644 F.3d 221, 226 (4th Cir. 2011) (citing *Am. Target Advertising, Inc.*, 257 F.3d at 351). "If the agency can make such a showing, the 'court must enforce the subpoena unless the party being investigated demonstrates that the subpoena is unduly burdensome.'" *Solis*, 644F.3d at 226 (quoting *Md. Cup Corp.*, 785 F.2d at 475-76).

"The burden of proving that an administrative subpoena is unduly burdensome is not easily met. The party subject to the subpoena must show that producing the documents would

4

seriously disrupt its normal business operations." *Md. Cup Corp.*, 785 F.2d at 477 (internal citations omitted). While a respondent may seek relief from compliance by demonstrating that the subpoena is so "overly broad for the purposes of the inquiry as to be oppressive," the respondent must first seek "reasonable conditions from the government to ameliorate the subpoena's breadth." *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000); *see also id.* at 351 ("[A]s a condition to maintaining the argument that an investigative subpoena is overly broad and oppressive, [the respondent] would have to be able to point to reasonable efforts on his behalf to reach accommodation with the government.") (internal citation omitted).

II. The Subpoena Was Properly Issued and is Enforceable

The Subpoena meets all three requirements for enforcement under Fourth Circuit precedent:

*First*, DEA issued the Subpoena in support of an authorized investigation within its jurisdiction under the CSA.

As explained in the Moran Declaration, DEA's investigation involves substances that may meet the definition of "anabolic steroids" under DASCA and, thus, may be controlled substances. *See* Moran Decl. at ¶¶ 7–9.

In the CSA, Congress identified a category of potentially dangerous drugs—designated as "controlled substances"—that have the potential for abuse and are subject to strict federal monitoring and regulation. *See Gonzales v. Raich*, 545 U.S. 1, 13–14 (2005). The CSA creates a "closed" system for regulating and monitoring controlled substances, under which it is unlawful to distribute, dispense, or possess any controlled substance except in a manner authorized by the

CSA. *Id.* at 13. Anabolic steroids are a Schedule III controlled substance. 21 U.S.C. § 812(e) & 21 C.F.R. § 1308.13(f).

Investigating the receipt and sale of such substances lies at the core of DEA's authority under the CSA. *See United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950) (agency issuing administrative subpoena operates "analogous[ly] to the Grand Jury" and "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.").

*Second*, DEA complied with all requirements of due process. The CSA authorizes the Attorney General to subpoena "the production of any records (including books, papers, documents, and other tangible things which constitute or contain evidence) which the Attorney General finds relevant or material" relating to "any investigation" under the CSA. 21 U.S.C. § 876(a). The sole statutory prerequisite for DEA's issuance of a subpoena pursuant to 21 U.S.C. § 876 is that the agency find the subpoenaed evidence relevant or material to its investigation. 21 U.S.C. § 876(a). As set forth below, the subpoenaed evidence is relevant to DEA's investigation. The Subpoena was issued by a DEA officer with authority to issue administrative subpoenas pursuant to 21 U.S.C. § 878(a)(2) and 28 C.F.R. pt. 0, Subpt. R, App. § 4(a), and the Subpoena was personally served on Respondent by DEA Diversion Investigators. *See* 21 U.S.C. § 876(b) ("Service upon a natural person may be made by personal delivery of the [subpoena] to him."). Because DEA issued the Subpoena in compliance with its statutory authority and personally served Respondent with the Subpoena, due process has been satisfied.

*Third*, the Subpoena seeks relevant material. As another division of this Court recently observed when enforcing a CSA administrative subpoena:

> Relevance in the administrative subpoena context should be construed broadly. So long as the material requested touches a matter under investigation, an administrative subpoena will survive a challenge that the material is not relevant. Courts defer to the DEA's own appraisal of what is relevant so long as it is not obviously wrong.
>
> Moreover, the CSA permits the DEA to subpoena any records "relevant or material" to its investigation, without any limitation that such subpoenas may only be issued to an entity under investigation, and courts routinely permit the DEA to subpoena relevant records from third parties.

*United States v. CVS Health Corp.*, No. 1:21-mc-00003, 2021 WL 5404665, at *2 (E.D. Va. Nov. 10, 2021) (internal quotations and citations omitted). Significantly, "[a]t the subpoena-enforcement stage, however, any effort by the court to assess the likelihood that the [government] would be able to prove the claims made in the charge would be reversible error. The [government's] authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit." *EEOC v. Randstad*, 685 F.3d 433, 449 (4th Cir. 2012) (internal quotations and citations omitted).

The information sought in the Subpoena is relevant to the investigation. The Subpoena seeks information regarding Respondent's receipt or sale of three substances (or products containing those substances) that may constitute controlled substances under the CSA. *See* Moran Decl., at ¶ 8. The information sought is directly relevant to the determination of whether these substances constitute "anabolic steroids" and is relevant to the assessing Respondent's handling of these substances. Accordingly, the third requirement for enforcement has been met.

CONCLUSION

For the foregoing reasons, the United States requests that its Petition for Enforcement of the Subpoena be granted.

Dated: February 24, 2025

                                                Respectfully submitted,

                                                ERIK S. SIEBERT
                                                United States Attorney

By:     /s/ John E. Beerbower
           JOHN E. BEERBOWER
           Assistant United States Attorney
           VA Bar No. 83644
           United States Attorney's Office
           *Counsel for the United States of America*
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Tel: 703.299.3841
           Fax: 703.299.3898
           john.beerbower@usdoj.gov